**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **AMANDA KREMERS and JASON** ) | |
| **McCANN, individually and on behalf of all** ) | |
| **others similarly situated,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **vs.** ) | **CIVIL NO. 09-333-GPM** |
| ) | |
| **COCA-COLA COMPANY,** ) | |
| ) | |
| **Defendant.** ) | |

# <u>MEMORANDUM AND ORDER</u>

**MURPHY, District Judge:**

## I. INTRODUCTION

This case is before the Court on a motion for summary judgment by Defendant Coca-Cola Company ("Coca-Cola") (Doc. 56). The Court has outlined the nature of the claims asserted in this case and the procedural history of the case in earlier orders in this case, *see, e.g., Kremers v. Coca-Cola Co.*, Civil No. 09-333-GPM, 2009 WL 2365613, at *1 (S.D. Ill. July 24, 2009), and the Court sees no reason to repeat that recitation here. This suit concerns the marketing of the popular soft drink Coca-Cola ("Coke"), specifically so-called "Classic" Coke. Plaintiffs Amanda Kremers and Jason McCann, who sue on behalf of themselves and a proposed class of Illinois citizens, allege that Coca-Cola's conduct in labeling cans and bottles of "Classic" Coke with the terms "Original Formula" constitutes a deceptive and unfair trade practice. This is because, Kremers and McCann contend, the "Original Formula" of Coke, which was invented in 1886, called for Coke to be sweetened using sucrose (ordinary table sugar, in essence), whereas "Classic" Coke currently is

sweetened using high fructose corn syrup ("HFCS").  In their complaint Kremers and McCann allege that selling a product containing HFCS as using the "Original Formula" for Coke comprises a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq*., and that Coca-Cola has been unjustly enriched through unlawful marketing activities.[1]  Coca-Cola now seeks summary judgment as to all of the claims in the case.  For the reasons that follow, the Court grants Coca-Cola's motion.

## II. ANALYSIS

### A.      Legal Standard

As an initial matter the Court notes the standard under which it must evaluate a request for summary judgment.  Rule 56 of the Federal Rules of Civil Procedure provides, in pertinent part, that "[a] party against whom relief is sought may move, with or without supporting affidavits, for summary judgment on all or part of the claim."  Fed. R. Civ. P. 56(b).  Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  In considering a motion for summary judgment, a court must review the entire record and draw all reasonable inferences in the light most favorable to the non-moving party.  *See NLFC, Inc. v. Devcom Mid-America, Inc*., 45 F.3d 231, 234 (7th Cir. 1995); *Enquip, Inc. v. Smith-McDonald Corp.*, 655 F.2d 115, 118 (7th Cir. 1981).  On summary judgment a court may not make credibility determinations or weigh the evidence, because these are tasks for

---

1.     At an earlier juncture in this case it appeared that Kremers and McCann contended also that marketing Coke containing HFCS as "Classic" Coke is a basis for claims under the ICFA and for unjust enrichment.  However, it now appears that the basis for the claims in this case is solely Coca-Cola's use of the terms "Original Formula" to market "Classic" Coke.

a fact-finder.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Betaco, Inc. v. Cessna Aircraft Co.*, 32 F.3d 1126, 1138 (7th Cir. 1994).  In evaluating a motion for summary judgment, "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial."   *Westefer v. Snyder*, Civil Nos. 00-162-GPM, 00-708-GPM, 2009 WL 2905548, at *3 (S.D. Ill. Sept. 4, 2009) (quoting *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994)).  With this standard in mind, the Court turns to the matter of the propriety of summary judgment in this case.[2]

### B.    Summary Judgment on Kremers's Claims

Coca-Cola seeks summary judgment on Kremers's claims under the ICFA and for unjust enrichment on the grounds that they are time-barred.  Illinois has a three-year statute of limitations for violations of the ICFA.  *See* 815 ILCS 505/10a(e); *Bova v. U.S. Bank, N.A.*, 446 F. Supp. 2d 926, 934 (S.D. Ill.  2006); *Kopley Group V, L.P. v. Sheridan Edgewater Props., Ltd.*, 876 N.E.2d 218, 231 (Ill. App. Ct. 2007).  Also, Illinois has a five-year statute of limitations for claims of unjust

---

2.    It perhaps is worth noting that, although this case is a putative class action and in fact a motion for class certification has been filed, the Court's concern here is solely with whether Kremers and McCann, as individuals, have viable claims against Coca-Cola.  Controlling authority suggests that a court should address the merits of the claims of the named plaintiffs in a putative class action before addressing any issues about class certification, because class representatives who do not have viable claims jeopardize the interests of the class they seek to represent.  *See Pruitt v. City of Chicago, Ill.*, 472 F.3d 925, 926 (7th Cir. 2006) (stating of a request for class certification by named plaintiffs who lacked viable individual claims, "that's problematic.  Do they [the proposed class representatives] want to take all other [class members] down in flames with them?  If so – or if they just don't care about that risk – then they have demonstrated inadequacy as [class] representatives and rendered class certification impossible."); *Frahm v. Equitable Life Assurance Soc'y of U.S.*, 137 F.3d 955, 957 (7th Cir. 1998) (proposed class representatives who lack viable individual claims bring their adequacy as class representatives into question by continuing to seek to represent similarly-situated persons); *Bieneman v. City of Chicago*, 838 F.2d 962, 964 (7th Cir. 1988) ("[A] class representative who has lost on the merits may have a duty to the class to oppose certification, to avoid the preclusive effect of the judgment" as to the classwide claims).

enrichment.  *See* 735 ILCS 5/13-205; *Brown v. New York Life Ins. Co.*, No. 06 C 3339, 2008 WL 151390, at *2 (N.D. Ill. Jan. 15, 2008) (citing *Frederickson v. Blumenthal*, 648 N.E.2d 1060, 1063 (Ill. App. Ct. 1995)).

In general, of course, a federal court sitting in federal diversity jurisdiction pursuant to 28 U.S.C. § 1332 must apply the substantive law of the state in which it sits.  *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-80 (1938); *Republic Tobacco Co. v. North Atl. Trading Co.*, 381 F.3d 717, 731-32 (7th Cir. 2004); *Land v. Yamaha Motor Corp.*, 272 F.3d 514, 516 (7th Cir. 2001). "Statutes of limitations are generally considered part of the forum state's substantive law which federal courts must apply when sitting in diversity." *Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523, 528 (7th Cir. 1999) (quoting *Evans v. Lederle Labs.*, 167 F.3d 1106, 1111-12 (7th Cir. 1999)).  Further, when applying a state statute of limitations, a federal court sitting in diversity must apply state law governing accrual of a cause of action for purposes of the commencement of a relevant limitations period.  *See Hollander v. Brown*, 457 F.3d 688, 694 (7th Cir. 2006) (quoting *Walker v. Armco Steel Corp.*, 446 U.S. 740, 748 (1980)) ("Like the statute of limitations itself, rules that are an 'integral part of the statute of limitations,' such as tolling and equitable estoppel, are treated as substantive for purposes of the *Erie* doctrine."); *Kalmich v. Bruno*, 553 F.2d 549, 552 (7th Cir. 1977) (citing *Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99 (1945)) ("State law barring an action because of a statute of limitations is sufficiently 'substantive,' in the *Erie* sense, that a federal court in that state exercising diversity jurisdiction must respect it.").  In this case, the basis for federal subject matter jurisdiction is diversity of citizenship pursuant to Section 1332, as amended by the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.).  Accordingly, the Court must apply both the relevant

limitations period or periods under Illinois law together with Illinois law governing the accrual of a cause of action for purposes of commencement of the applicable limitations period.

In general, of course, Illinois applies the so-called "discovery rule" in actions involving "tort, tort arising from contract, or other breach of contractual duty." *Hermitage Corp. v. Contractors Adjustment Co.*, 651 N.E.2d 1132, 1136 (Ill. 1995). Under the discovery rule, a cause of action under Illinois law does not accrue for purposes of the statute of limitations, and thus the relevant limitations period does not begin to run, "until the injured party knows or should have known of his injury." *City Nat'l Bank of Fla. v. Checkers, Simon & Rosner*, 32 F.3d 277, 282 (7th Cir. 1994) (quoting *Knox Coll. v. Celotex Corp.*, 430 N.E.2d 976, 979 (Ill. 1981)). *See also Clay v. Kuhl*, 727 N.E.2d 217, 220 (Ill. 2000) (the discovery rule delays the accrual of a cause of action, and hence the start of the clock on the statute of limitations, until a plaintiff "knows or reasonably should know of an injury and that the injury was wrongfully caused."); *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 633 N.E.2d 627, 630-31 (Ill. 1994) (the discovery rule "delays the commencement of the relevant statute of limitations until the plaintiff knows or reasonably should know that he has been injured and that his injury was wrongfully caused."); *Dockery v. Ortiz*, 541 N.E.2d 226, 231 (Ill. App. Ct. 1989) ("The effect of th[e] 'discovery rule' is to postpone the starting of the period of limitations until the injured party knows or should have known of his injury and also knows or reasonably should have known that it was wrongfully caused.") (citations omitted). *Cf. Tammerello v. Ameriquest Mortgage Co.*, No. 05 C 466, 2006 WL 2860936, at *7 (N.D. Ill. Sept. 29, 2006) (citing *Knox Coll.*, 430 N.E.2d at 979) (a claim accrues under the ICFA "when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused."). Thus, the principal question for the Court to decide at this

juncture is when Kremers knew or reasonably should have known of her alleged unlawful injury at the hands of Coca-Cola.

Importantly, "[t]he discovery rule does not allow a plaintiff to wait until the defendant admits it has caused plaintiff's damage," and it "places the burden on plaintiffs to inquire as to the existence of a cause of action." *Carey v. Kerr-McGee Chem. Corp.*, 999 F. Supp. 1109, 1116 (N.D. Ill. 1998). Put differently, under the discovery rule, a cause of action accrues when a plaintiff is "possessed of sufficient information concerning its injury to put a reasonable person on inquiry to determine whether actionable conduct is involved." *Vector-Springfield Props., Ltd. v. Central Ill. Light Co.*, 108 F.3d 806, 809 (7th Cir. 1997). *See also McWane, Inc. v. Crow Chicago Indus., Inc.*, 224 F.3d 582, 585 (7th Cir. 2000) ("The [limitations] period begins when the injury could have been discovered through the exercise of appropriate diligence, not discovery of the actual injury."). In sum, the discovery rule does not require a plaintiff to begin seeking a judicial remedy once the plaintiff first has knowledge of an injury, but neither does it permit a plaintiff to sit on his or her rights until such time as the plaintiff knows that he or she has a cause of action. "[T]he event which triggers the running of the statutory period is not the first knowledge the injured person has of his injury, and, at the other extreme, . . . it is not the acquisition of knowledge that one has a cause of action against another for an injury he has suffered." *Knox Coll.*, 430 N.E.2d at 980. If the standard were otherwise, then a plaintiff could wait comfortably until advised by a lawyer that he or she can sue, thus defeating one of the primary purposes behind statutes of limitations, that is, "to encourage claimants to investigate and pursue causes of action in order to discourage delay[.]" *Langendorf v. City of Urbana*, 754 N.E.2d 320, 326 (Ill. 2001) (citing *Golla v. General Motors Corp.*, 657 N.E.2d 894, 902 (Ill. 1995)). *See also Pavlik v. Kornhaber*, 761 N.E.2d 175, 186 (Ill. App. Ct. 2001) (noting

that statutes of limitations exist not to shield wrongdoers but "to discourage the presentation of stale claims and to encourage diligence in the bringing of actions").

In this instance Kremers conceded at her deposition that she has known since the 1990s that "Classic" Coke, a product that was introduced by Coca-Cola in 1985 following the well-publicized debacle of Coca-Cola's attempt to popularize its so-called "New Coke" beverage, contains HFCS and that "Classic" Coke is marketed as the "Original Formula" of Coke.

> Q:  Do you think it might have been during the 1990s that you first noticed high fructose corn syrup was in Coca-Cola Classic?
> A:  Yes, I would say that.

Doc. 57-1 at 15.[3]  Kremers has admitted also that she read the words "Original Formula" on a container of "Classic" Coke in the 1990s.  *See id*. at 6-7.  She concedes that, in light of the information she possessed in the 1990s, she could have ascertained at that time that Coke containing HFCS is not the "Original Formula" of the beverage.  Kremers testified as follows in response to questioning by Coca-Cola's attorney:

> Q:   .  .  .  [D]o you agree that you could have had the same revelation [that "Classic" Coke sweetened with HFCS is not the "Original Formula" of Coke] earlier?
> A:  Yeah.
> Q:  You could have noticed it just as easily five years ago?
> A:  Probably, yes.
> Q:  Ten years ago?
> A:  Probably not ten years ago.
> Q:  And why not ten years ago?
> A:  Because I was only 19.
> Q:  But –
> A:  I mean if I was to look, yes, I would have noticed it.
> Q:   Is it, in your belief, Coca-Cola Company's fault that you didn't notice it ten years ago or is it just a matter of what you chose to read on the can at the time?

---

3.      The page numbers to which the Court cites in this Order are the ones assigned by the Court's CM/ECF system.

A:  It was what I chose to read at that time.  I didn't pay attention to what was on the cans.

*Id*. at 11-12.  The Court concludes that Kremers's knowledge in the 1990s that "Classic" Coke is sweetened with HFCS rather than sucrose in the 1990s was sufficient to put her on notice to inquire whether a product containing HFCS is indeed the "Original Formula" for Coke.

Tellingly, counsel for Plaintiffs, in responding to Coca-Cola's motion for summary judgment, make no serious effort to address the issue of when Kremers knew or reasonably should have known of her injury and instead argue in general terms that Coca-Cola concealed facts from members of the proposed class.  As already has been discussed, however, the issue before the Court is whether Kremers has a viable claim against Coca-Cola, not whether the members of the putative class have such claims.  Also, there is no evidence of fraudulent concealment by Coca-Cola.  While the evidence of record shows that Coca-Cola has been concerned in recent years about the fact that opposition to HFCS as a sweetening agent in beverages, including soft drinks, seems to be intensifying among American consumers, there is no proof in the record that Coca-Cola took any affirmative steps that precluded Kremers from discovering her cause of action against the soft-drink manufacturer.  Under Illinois law, "[i]f a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within 5 years after the person entitled to bring the same discovers that he or she has such cause of action, and not afterwards."  735 ILCS 5/13-215.  *See also Smith v. City of Chicago Heights*, 951 F.2d 834, 837 & n.3 (7th Cir. 1992).  "Fraudulent concealment in the law of limitations presupposes that the plaintiff has discovered or, as required by the discovery rule should have discovered, that the defendant injured him.  It denotes efforts by the defendant, above and

beyond the wrongdoing upon which the plaintiff's claim is founded, to prevent, by fraud or deception, the plaintiff from suing in time." *Shropshear v. Corporation Counsel of City of Chicago*, 275 F.3d 593, 595 (7th Cir. 2001). *Cf. Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990) (in the context of federal common law regarding the accrual of statutes of limitations, "fraudulent concealment . . . must not be confused with efforts by a defendant in a fraud case to conceal the fraud."). Correspondingly, "[s]ilence alone on the part of the defendant, accompanied by the failure of the plaintiff to discover the cause of action, ordinarily does not constitute fraudulent concealment." *Chicago Park Dist. v. Kenroy*, 402 N.E.2d 181, 185 (Ill. 1980). *See also Gredell v. Wyeth Labs., Inc.*, 803 N.E.2d 541, 548 (Ill. App. Ct. 2004) ("[M]ere silence by defendants and failure by plaintiff to learn of his cause of action do not amount to fraudulent concealment."); *Harvey v. Harris Trust & Sav. Bank*, 391 N.E.2d 461, 466 (Ill. App. Ct. 1979) (to show fraudulent concealment, there must be "[a]cts or misrepresentations affirmatively showing fraudulent concealment of a cause of action by the defendant").[4] The doctrine of fraudulent concealment pursuant to Section 215 has no applicability here.

---

4. There is an exception to the rule that silence does not constitute fraudulent concealment such as to prevent the running of the statute of limitations where parties stand in a fiduciary relationship:

> [A]s between persons sustaining a fiduciary or trust or other confidential relationship toward each other, the person occupying the relation of fiduciary or of confidence is under a duty to reveal the facts to the plaintiff (the other party), and that his silence when he ought to speak, or his failure to disclose what he ought to disclose, is as much a fraud at law as an actual affirmative false representation or act; and that mere silence on his part as to a cause of action, the facts giving rise to which it was his duty to disclose, amounts to a fraudulent concealment

*Kenroy*, 402 N.E.2d at 185 (quoting L.S. Tellier, Annotation, *What Constitutes Concealment Which Will Prevent Running of Statute of Limitations*, 173 A.L.R. 576, 588 (1948)). In this instance, of course, there is no fiduciary relationship between Coca-Cola and Kremers.

In this case, it is apparent from the evidence of record that, particularly in recent years when, as noted, consumer hostility to HFCS has become increasingly pronounced, Coca-Cola has not sought to call attention to the fact that it uses HFCS to sweeten "Classic" Coke.  However, it also is plain from the undisputed evidence that the company did nothing to conceal from Kremers its use of HFCS to sweeten "Classic" Coke.  The record shows that, as early as the 1990s, Kremers, simply by reading the list of ingredients printed on a container of "Classic" Coke, knew that the beverage contains HFCS; from there it was only a step to discover that "Classic" Coke is not the "Original Formula" of the drink, given that HFCS was not synthesized until the 1950s, while Coke, as has been noted already, was invented in 1886.  In light of the fact that Kremers knew in the 1990s that "Classic" Coke is sweetened with HFCS, the Court finds that Kremers was on inquiry notice of her cause of action against Coca-Cola in the 1990s and that her failure to inquire at that time about whether "Classic" Coke sweetened with HFCS is the "Original Formula" for Coke renders her claims in this case untimely.  Under Illinois law, "In many, if not most, cases the time at which an injured party knows or reasonably should have known both of his injury and that it was wrongfully caused will be a disputed question to be resolved by the finder of fact . . . . Where it is apparent from the undisputed facts, however, that only one conclusion can be drawn, the question becomes one for the court."  *Kirksey v. Trefzger*, 530 N.E.2d 559, 562 (Ill. App. Ct. 1988) (quoting *Witherell v. Weimer*, 421 N.E.2d 869, 874 (Ill. 1981)).  *See also Nolan v. Johns-Manville Asbestos*, 421 N.E.2d 864, 868-69 (Ill. 1981) ("[O]nce it reasonably appears that an injury was wrongfully caused, the party may not slumber on his rights.  The question of when a party knew or should have known both of an injury and its probable wrongful cause is one of fact, unless the facts are undisputed and only one conclusion  may be drawn from them."); *LaManna v. G.D. Searle & Co.*, 561 N.E.2d 1170, 1175

(Ill. App. Ct. 1990) ("The point at which a party reasonably should have known that an injury was wrongfully caused is a question of fact, unless only one conclusion can be drawn at some particular point from undisputed facts.").[5]   Further, where the undisputed facts clearly show that a plaintiff's cause of action is untimely, it is for the court to decide as a matter of law that the statute of limitations has run.  *See Lubin v. Jewish Children's Bureau of Chicago*, 765 N.E.2d 1138, 1141 (Ill. App. Ct. 2002) ("Ordinarily, the trier of fact must decide the point at which a plaintiff reasonably should have known that a wrongful act caused his injury . . . . But the court properly decides the issue without trial if all reasonable persons would draw the same conclusion from the undisputed facts."); *Betts v. Manville Pers. Injury Settlement Trust*, 588 N.E.2d 1193, 1202 (Ill. App. Ct. 1992) ("The application of the discovery rule to determine when a party knows or reasonably should have known the injury occurred and it was wrongfully caused such that the statute of limitation begins to run is a question of fact, unless the facts are undisputed and only one conclusion may be drawn from them, . . . in which case summary judgment will be an appropriate disposition."); *Aspegren v. Howmedica, Inc.*, 472 N.E.2d 822, 824 (Ill. App. Ct. 1984) ("Although an injured person is not held to a standard of knowing the inherently unknowable, he may not slumber on his rights once it appears that the injury was wrongfully caused . . . . If only one conclusion can be drawn from the undisputed facts, . . . the question of the timeliness of plaintiff's complaint becomes one for the court.").

---

5.    The Court notes that the allocation of responsibilities between the finder of law and the finder of fact in federal court is governed by federal law.  *See Aliotta v. National R.R. Passenger Corp.*, 315 F.3d 756, 766 n.11 (7th Cir. 2003) (citing *Byrd v. Blue Ridge Rural Elec. Coop., Inc.*, 356 U.S. 525 (1958)); *Houben v. Telular Corp.*, 231 F.3d 1066, 1072 (7th Cir. 2000) (citing *Mayer v. Gary Partners & Co.*, 29 F.3d 330, 333-35 (7th Cir. 1994)).  However, the Illinois state decisions cited above point up the important principle that, in numerous cases (but not this one), it will be impossible for a court to find as a matter of law that a statute of limitations has run.

Here Kremers's own deposition testimony establishes that she reasonably knew or could have known of the injury alleged by her in this case in the 1990s, yet she failed to bring suit on her injury until well into the next decade.  There is no genuine issue of material fact for trial as to when Kremers's claims accrued for purposes of the statute of limitations:  in the 1990s.  Therefore, Kremers's claims against Coca-Cola under the ICFA and for unjust enrichment are time-barred by the applicable statutes of limitations.  The Court will grant summary judgment in favor of Coca-Cola as to Kremers's claims in this case.

### C.    Summary Judgment on McCann's Claims

Having concluded that summary judgment for Coca-Cola should be granted on Kremers's claims, the Court turns next to the matter of whether summary judgment is proper as to McCann's claims under the ICFA and for unjust enrichment.  For the following reasons the Court concludes that summary judgment must be granted in favor off Coca-Cola.[6]

### 1.    Unfair Trade Practices

As discussed, this action asserts claims for deceptive and unfair trade practices under the ICFA.  The statute provides, in relevant part,

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.  In construing this section consideration shall be given to the interpretations

---

6.   It should be noted that, while the Court already has found that Kremers's claims in this case are time-barred, the Court's discussion of the fatal defects in McCann's claims that follows applies with equal force to Kremers's claims.

> of the Federal Trade Commission and the federal courts relating to Section 5(a) of
> the Federal Trade Commission Act.

815 ILCS 505/2 (footnotes omitted).  *See also Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938

(7th Cir. 2001).  As the language of Section 2 of the ICFA makes clear, the statute prohibits both

unfair trade practices and deceptive trade practices.  *See Johnson v. Allstate Ins. Co.*,

No. 07-CV-0781-MJR-PMF, 2009 WL 3230157, at *6 (S.D. Ill. Sept. 30, 2009); *Ramirez v. Smart*

*Corp.*, 863 N.E.2d 800, 812 (Ill. App. Ct. 2007); *Rockford Mem'l Hosp. v. Havrilesko*, 858 N.E.2d

56, 62 (Ill. App. Ct. 2006); *Hill v. PS Ill. Trust*, 856 N.E.2d 560, 568 (Ill. App. Ct. 2006); *Crichton v.*

*Golden Rule Ins. Co.*, 832 N.E.2d 843, 852 (Ill. App. Ct. 2005).  Section 10a of the ICFA furnishes

a private civil remedy for "[a]ny person who suffers actual damage as a result of a violation of this

Act committed by any other person[.]"  *Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 588 (7th Cir. 2001)

(quoting 815 ILCS 505/10a(a)).  Despite the broad language of Section 10a, it now is understood

that, in general, the statute may only be invoked by Illinois residents.  *See Crichton v.*

*Golden Rule Ins. Co.*, 576 F.3d 392, 396-97 (7th Cir. 2009); *Morrison v. YTB Int'l, Inc.*, 641

F. Supp. 2d 768, 775-76 (S.D. Ill. 2009); *Hall v. Sprint Spectrum L.P.*, 876 N.E.2d 1036, 1040-44

(Ill. App. Ct. 2007); *Phillips v. Bally Total Fitness Holding Corp.*, 865 N.E.2d 310, 315-16

(Ill. App. Ct. 2007).

Although the complaint in this case alleges both deceptive trade practices and unfair trade

practices by Coca-Cola, counsel for Plaintiffs concede in their response to Coca-Cola's motion for

summary judgment that judgment should be given for Coca-Cola on the issue of deceptive trade

practices, a view with which the Court concurs.  To establish a prima facie case in a private civil

action for deceptive trade practices proscribed by Section 2 of the ICFA, "a plaintiff must establish:

(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 850 (Ill. 2005) (citing *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 160 (Ill. 2002)).   To prove the element of proximate causation in a private cause of action brought under the ICFA, "a plaintiff must allege that he was, in some manner, deceived." *Oliveira*, 776 N.E.2d at 164.   *See also De Bouse v. Bayer*, 922 N.E.2d 309, 316 (Ill. 2009) ("[T]o maintain an action under the [ICFA], the plaintiff must actually be deceived by a statement or omission that is made by the defendant."); *Avery*, 835 N.E.2d at 861 (quoting *Oliveira*, 776 N.E.2d at 164) ("[I]t is not possible for a plaintiff to establish proximate causation unless the plaintiff can show that he or she was, 'in some manner, deceived' by the misrepresentation."). "In other words, a damages claim under the ICFA requires that the plaintiff was deceived in some manner and damaged by the deception."   *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513-14 (7th Cir. 2006) (citing *Oliveira*, 776 N.E.2d at 164).   *See also Siegel v. Shell Oil Co.*, 656 F. Supp. 2d 825, 832-33 (N.D. Ill. 2009) (finding that a consumer could not maintain an ICFA claim for deceptive trade practices based on alleged misrepresentations by oil companies regarding inflated gasoline prices where the consumer admitted that he did not believe the companies' advertising and other statements that purportedly justified the prices and that in fact he thought such statements were self-serving); *Price v. Philip Morris, Inc.*, 848 N.E.2d 1, 52 (Ill. 2005) ("In *Oliveira*, this court equated cause-in-fact with deception."); *Shannon v. Boise Cascade Corp.*, 805 N.E.2d 213, 217 (Ill. 2004) ("[D]eceptive advertising cannot be the proximate cause of damages under the [ICFA] unless it actually deceives the plaintiff.").

In this case, any claim for deceptive trade practices necessarily founders on the issue of causation. Just as Kremers has known since the 1990s that "Classic" Coke is sweetened with HFCS, so McCann's testimony at his deposition is that, before he was approached by counsel for Plaintiffs in this case about serving as the representative of the proposed class, he never saw, and thus never was deceived by, the words "Original Formula" on containers of "Classic" Coke:

> Q:  Have you ever read the whole can [of "Classic" Coke]?
> A:  Yes.
> Q:  And when did you first read the whole can?
> A:  I don't actually have an exact date or anything like that, but it was recent going through some things.
> Q:  Was it after your first interaction with Mr. Maag?
> A:  Yes.
> Q:  So before then you had never read the full can?
> A:  Right.
> Q:  Had you ever read the words "original formula" on the can before then?
> A:  No.
> Q:  And had you purchased Coke before then?
> A:  Yes.
> Q:  And in all of those purchases prior to then, would it be fair to say, then, you didn't rely on the words "original formula" when you bought the can?
> A:  Yes.

Doc. 57-1 at 33-34.  In his testimony McCann conceded that, because he never noticed the terms "Original Formula" on containers of "Classic" Coke before being approached about acting as a Plaintiff in this case, he was not deceived by Coca-Cola's use of the phrase "Original Formula" to market "Classic" Coke:

> Q:  Would it be fair to say . . . that since you personally hadn't read that language ["Original Formula"], you weren't misled by that language?
>
> * * *
>
> A:  I think in a way, yes.  I'd have to honestly say yes.
> Q:  Would you agree that what you're concerned about isn't really any misleading that happened to you, but maybe misleading that you feel happened to other people

who may have read it?
A: Yes.
Q: But to the extent somebody had read it and felt that they had been misled by it, that would be different than your experience, correct?
A: Yes.

*Id*. at 40.

In light of McCann's deposition testimony, it is plain that he cannot prove that he was actually deceived by the use of the terms "Original Formula" to market "Classic" Coke and hence cannot prove proximate causation for purposes of a claim for deceptive trade practices under the ICFA. *See In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, MDL No. 1703, Nos. 05 C 4742, 05 C 2623, 2007 WL 4287511, at *9 (N.D. Ill. Dec. 4, 2007) (in a proposed class action under the ICFA alleging deceptive marketing of tools, stating that it is "necessary to show that each class member purchased the tool and paid the price as a result of defendant's deception"); *Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 927 (Ill. 2007) ("Under *Oliveira* and its progeny, plaintiffs must prove that each and every consumer who seeks redress actually saw and was deceived by the statements in question."); *Shannon*, 805 N.E.2d at 219 (proximate cause for purposes of the ICFA was lacking where the defendant's alleged misrepresentations "did not, directly or indirectly, reach any plaintiff"); *Oliveira*, 776 N.E.2d at 163 (in a class action under the ICFA based on false advertising by the defendant, there was no proximate causation where the plaintiff "[did] not allege that he saw, heard or read any of defendant's ads"). The Court recognizes that proximate causation ordinarily is a question of fact for a jury. *See Lee v. Chicago Transit Auth.*, 605 N.E.2d 493, 502-03 (Ill. 1992); *Thacker v. UNR Indus., Inc.*, 603 N.E.2d 449, 455 (Ill. 1992); *Mack v. Ford Motor Co.*, 669 N.E.2d 608, 612-13 (Ill. App. Ct. 1996). Where, however, "there is no material issue regarding the matter or only one conclusion is clearly evident" from the undisputed

facts, a court may find lack of proximate causation as a matter of law.  *Williams v. University of Chicago Hosps.*, 688 N.E.2d 130, 134 (Ill. 1997).  *See also Mark Twain Ill. Bank v. Clinton County*, 706 N.E.2d 94, 96 (Ill. App. Ct. 1999) (noting that issues of proximate cause are questions of fact for the jury to resolve, "provided that there is a genuine issue of material fact regarding those issues"); *Sokolowski v. All Points Distrib. Serv., Inc.*, 612 N.E.2d 79, 82 (Ill. App. Ct. 1993) ("[I]f on all the evidence reasonable men could come to only one conclusion, the question of proximate cause is to be decided as a matter of law.").  Here, of course, there is no dispute that at the times relevant to this case McCann never saw or relied on the terms "Original Formula" on containers of "Classic" Coke, and therefore the Court finds as a matter of law that those terms did not deceive him and McCann therefore was not proximately injured by the alleged misrepresentation.  Thus, McCann cannot maintain a claim for deceptive trade practices under the ICFA.

Although counsel for Plaintiffs concede that a claim for deceptive trade practices under the ICFA cannot be maintained in this case, they contend nonetheless that they can establish a claim for unfair trade practices under the statute.  To establish a prima facie case of unfair trade practices under the ICFA, a plaintiff must prove that a defendant intentionally engaged in an unfair practice in the course of conduct involving trade or commerce, and that this practice proximately caused harm to the plaintiff.  *See Rickher v. Home Depot, Inc.*, 535 F.3d 661, 665 (7th Cir. 2008); *Morrison v. YTB Int'l, Inc.*, Civil Nos. 08-565-GPM, 08-579-GPM, 2010 WL 1558712, at *3 (S.D. Ill. Apr. 19, 2010); *Centerline Equip. Corp. v. Banner Pers. Serv., Inc.*, 545 F. Supp. 2d 768, 779 (N.D. Ill. 2008) (citing *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002)).  The words "unfair . . . practice[ ]" as they are employed in 815 ILCS 505/2 are inherently insusceptible to precise definition and effective enforcement of the ICFA requires that the

meaning of the statutory language remains flexible.  *See Falcon Assocs., Inc. v. Cox*, 699 N.E.2d 203, 209 (Ill. App. Ct. 1998); *Lee v. Nationwide Cassel, L.P.*, 660 N.E.2d 94, 100 (Ill. App. Ct. 1995), *reversed in part on other grounds* 675 N.E.2d 599 (Ill. 1996); *People ex rel. Hartigan v. Maclean Hunter Publ'g Corp.*, 457 N.E.2d 480, 486 (Ill. App. Ct. 1983); *People ex rel. Fahner v. Testa*, 445 N.E.2d 1249, 1252 (Ill. App. Ct. 1983).  Thus, courts must determine whether a particular challenged trade practice is "unfair" within the meaning of the ICFA on a case-by-case basis.  *See Tylka v. Gerber Prods. Co.*, No. 96 C 1647, 1999 WL 495126, at *4 (N.D. Ill. July 1, 1999); *Scott v. Association for Childbirth at Home, Int'l* , 430 N.E.2d 1012, 1018 (Ill. 1981); *Fitzgerald v. Chicago Title & Trust Co.*, 380 N.E.2d 790, 794 (Ill. 1978); *Saunders v. Michigan Ave. Nat'l Bank*, 662 N.E.2d 602, 608 (Ill. App. Ct. 1996); *Elder v. Coronet Ins. Co.*, 558 N.E.2d 1312, 1316 (Ill. App. Ct. 1990).

When determining what constitutes an unfair practice, the ICFA directs courts to give "consideration . . . to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act ['FTCA,' 15 U.S.C. § 45(a)]."  815 ILCS 505/2.  *See also B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 970 n.1 (7th Cir. 1999).  For the purpose of deciding whether a trade practice is unfair within the meaning of the ICFA, the Supreme Court of Illinois has adopted the three factors identified by the Supreme Court of the United States as relevant in determining if a given trade practice is violative of the FTCA:  "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." *Robinson*, 775 N.E.2d at 961 (citing *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n.5 (1972)).  *See also Pappas v. Pella Corp.*, 844 N.E.2d 995, 1002-03 (Ill. App. Ct. 2006); *Mosiman v. BMW Fin. Servs.*

*NA, Inc*., 748 N.E.2d 313, 317 (Ill. App. Ct. 2001); *Jones v. Universal Cas. Co.*, 630 N.E.2d 94, 103

(Ill. App. Ct. 1994); *Ekl v. Knecht*, 585 N.E.2d 156, 163 (Ill. App. Ct. 1991).  Not all of these factors

must be satisfied in a particular case, and a "practice may be unfair because of the degree to which

it meets one of the criteria or because to a lesser extent it meets all three."  *Robinson*, 775 N.E.2d

at 961 (quoting *Cheshire Mortgage Serv., Inc. v. Montes*, 612 A.2d 1130, 1143-44 (Conn. 1992)).

*See also Demitro v. General Motors Acceptance Corp*., 902 N.E.2d 1163, 1168 (Ill. App. Ct. 2009);

*Sklodowski v. Countrywide Home Loans, Inc*., 832 N.E.2d 189, 197 (Ill. App. Ct. 2005); *Johnson v.

Matrix Fin. Servs. Corp.*, 820 N.E.2d 1094, 1100 (Ill. App. Ct. 2004).  Accordingly, the Court will

examine the three factors identified by the Illinois Supreme Court in *Robinson* as being relevant to

a finding of unfairness under the ICFA with respect to a given trade practice and how those factors

relate to this case.

      Concerning public policy, in general the public policy of the State of Illinois is

gleaned from its statutes, judicial decisions, constitution, and the practices of its government

officials.  *See American Home Assurance Co. v. Stone*, 61 F.3d 1321, 1324-25 (7th Cir. 1995) (citing

*Zeigler v. Illinois Trust & Sav. Bank*, 91 N.E. 1041, 1046 (Ill. 1910)); *O'Hara v. Ahlgren,

Blumenfeld & Kempster*, 537 N.E.2d 730, 734 (1989); *McClure Eng'g Assocs., Inc. v.

Reuben H. Donnelley Corp.*, 447 N.E.2d 400, 402 (Ill. 1983)); *Smith v. Board of Educ. of Oswego

Cmty. High Sch. Dist*., 89 N.E.2d 893, 896 (Ill. 1950); *Hyatte v. Quinn*, 607 N.E.2d 321, 324

(Ill. App. Ct. 1993); *Petrillo v. Syntex Labs., Inc*., 499 N.E.2d 952, 956 (Ill. App. Ct. 1986).

*Cf. People ex rel. Fahner v. Hedrich*, 438 N.E.2d 924, 929 (Ill. App. Ct. 1982) (quoting *Sperry*, 405

U.S. at 244 n.5) (a practice is unfair if it "offends public policy as it has been established by statutes,

the common law, or otherwise . . . is within at least the penumbra of some common-law,

statutory, or other established concept of unfairness."). Counsel for Plaintiffs in this case contend that Coca-Cola's practice of marketing "Classic" Coke containing HFCS as the "Original Formula" of the beverage violates the public policy of Illinois against deceptive advertising. However, this is simply an attempt to fudge on the factor of public policy, because, as already has been discussed, counsel concede that the trade practices in dispute in this case are not deceptive. Thus, the relevant inquiry is whether there is any public policy of Illinois that proscribes the use of HFCS as a sweetening agent in beverages and foodstuffs.[7]  Naturally, no such public policy of Illinois exists. Accordingly, the first of the three *Robinson* factors does not weigh in favor of a finding of unfairness in connection with Coca-Cola's trade practices.

The Court turns next to the question of whether Coca-Cola's trade practices are immoral, unethical, oppressive, or unscrupulous, so as to violate the provisions of the ICFA governing unfair trade practices.  In general, a trade practice satisfies the second prong of the test of unfairness under the ICFA when it "leave[s] the consumer with little alternative except to submit to it[.]"  *Galvan v. Northwestern Mem'l Hosp.*, 888 N.E.2d 529, 536 (Ill. App. Ct. 2008) (quoting *Robinson*, 775 N.E.2d at 961).  *See also Love v. O'Connor Chevrolet, Inc.*, No. 05 C 1980, 2006 WL 2460581, at *7 (N.D. Ill. Aug. 21, 2006) ("For a practice to be unfair under ICFA, the practice must violate public policy, be so oppressive that the consumer has little alternative but to submit, and substantially injure the consumer."); *Pantoja-Cahue v. Ford Motor Credit Co.*, 872 N.E.2d 1039, 1048 (Ill. App. Ct. 2007) (quoting *Robinson*, 775 N.E.2d at 961) (to satisfy the ICFA test of unfairness, a challenged trade practice "must violate public policy, be so oppressive as to leave the consumer

---

7.    It perhaps is worth noting that there is no claim in this case that HFCS is harmful to human health, only that the practice of selling Coke containing HFCS as the "Original Formula" of Coke is unlawful.

with little alternative except to submit to it, and injure the consumer.").  In this case, as already has

been discussed, McCann concedes in his deposition testimony that he was unaware that Coca-Cola

markets "Classic" Coke as using the "Original Formula" for the beverage until he was approached

by counsel for Plaintiffs about serving as a representative of the proposed class in this case; thus, the

reasonable inference to be drawn is that McCann has not been oppressed by Coca-Cola's trade

practices.[8]  In sum, there is "a total absence of the type of oppressiveness and lack of meaningful

choice necessary to establish unfairness[.]"  *Robinson*, 775 N.E.2d at 962 (holding that penalties

assessed by vehicle lessors were not unfair so as to violate the ICFA where the penalties were clearly

disclosed in the lease papers and the lessees did not claim that they were coerced into signing the

leases because of dire alternatives threatened by the lessors or that they lacked reasonable

alternatives in the marketplace to acquire automobiles).  *See also Saunders v. Michigan Ave. Nat'l

Bank*, 662 N.E.2d 602, 608-09 (Ill. App. Ct. 1996) (a bank's policy of charging a fee of $20 per day

on each insufficient funds check that it honored was not an unfair trade practice as alleged by a

customer of the bank where the customer "not only had control over whether she would be assessed

an overdraft fee, but was free to select another Bank.").

The Court turns to the third of the factors set out in *Robinson*, whether Coca-Cola's trade

practices cause substantial injury to consumers.  To satisfy the third prong of the test of unfairness,

a trade practice must cause an injury to consumers that is (1) substantial, (2) not outweighed by any

countervailing benefits to consumers or competition produced by the trade practice at issue,

---

8.    Similarly, as Kremers conceded in her deposition, nobody is forcing her or anybody else to
purchase "Classic" Coke.  *See* Doc. 62-1 at 16.  In fact, Kremers acknowledged that she rarely
buys "Classic" Coke, as she prefers other soft drinks, although she admits that she
purchases "Classic" Coke for her family and has done so even after the commencement of this
lawsuit.  *See* Doc. 57-1 at 10-11, 24-27.

and (3) is an injury that consumers themselves could not reasonably have avoided.  *See Cheshire Mortgage*, 612 A.2d at 1147.  Here it does not appear that Coca-Cola's trade practices have caused McCann any substantial injury, as he estimates that he purchases approximately one can of "Classic" Coke per week, in addition to buying a twelve-pack of "Classic" Coke each week for his father-in-law.  *See* Doc. 57 -1 at 34-35.[9]  Second, it appears that there are countervailing benefits of Coca-Cola's trade practices, because McCann (like Kremers) admits that he has continued to purchase "Classic" Coke after the commencement of this suit and despite knowledge that the product contains HFCS.  *See id.*  Finally, as already has been discussed in connection with the second prong of the *Robinson* test, the injury caused by Coca-Cola's trade practices, if any, is one that McCann, and, for that matter, any other consumer of "Classic" Coke quite easily could have avoided, by, for example, simply drinking a different soft drink or other beverage.  *See Tudor v. Jewel Food Stores, Inc.*, 681 N.E.2d 6, 8 (Ill. App. Ct. 1997) (holding that a store's conduct in occasionally overcharging customers did not satisfy the second prong of the unfairness test under the ICFA, where customers were issued a receipt with each purchase and the store's policy was to refund any overcharges on a customer's request).  Thus, the third *Robinson* factor does not weigh in favor of a finding of unfairness in this case.

Finally, as Coca-Cola points out in its brief in support of its summary judgment motion, there is no way that, in view of the deposition testimony of both Kremers and McCann, counsel for Plaintiffs in this case can establish that Coca-Cola's trade practices proximately resulted in injury.  As already has been noted, "a private cause of action under [the] ICFA requires a showing

---

9.    Similarly, Kremers estimates that she has purchased "Classic" Coke on approximately seven occasions during the proposed class period in this case, an injury that hardly can be called substantial.  *See* Doc. 57-1 at 10-11.

of proximate causation." *Clark v. Experian Info. Solutions, Inc.*, 256 Fed. Appx. 818, 821

(7th Cir. 2007) (quoting *Oshana*, 472 F.3d at 514-15). *See also Geschke v. Air Force Ass'n*, 425

F.3d 337, 345 (7th Cir. 2005) (an element of a claim under the ICFA is that "the damage was

proximately caused by" a challenged trade practice); *Hamilton v. O'Connor Chevrolet, Inc.*,

No. 02 C 1897, 2006 WL 1697171, at *8 (N.D. Ill. June 12, 2006) (quoting *Oliveira*, 776 N.E.2d

at 160) ("[A] private ICFA cause of action 'requires proof that the damage occurred . . . as a result

of . . . the deceptive act or practice . . . . [T]his language imposes a proximate causation

requirement[.]'"); *Avery*, 835 N.E.2d at 861 ("Proximate causation is an element of all private causes

of action under the [ICFA]."); *Oliveira*, 776 N.E.2d at 160 (quoting 815 ILCS 505/10a(a))

("Unlike an action brought by the Attorney General [of Illinois] under [the ICFA], which does not

require that . . . any person has in fact been misled, deceived or damaged[,] . . . a private cause of

action brought under section 10a(a) requires proof of 'actual damage' . . . . [and] proof that the

damage occurred 'as a result of' the deceptive act or practice."); *Galvan*, 888 N.E.2d at 535 (quoting

*Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (Ill. 1996)) ("[A] valid claim must show that the

[unfair trade practice] proximately caused plaintiff's injury.").

Kremers's testimony that she has known for many years that "Classic" Coke contains HFCS

(and thus is not the "Original Formula" for Coke) and McCann's testimony that he was unaware until

approximately the time this suit commenced that "Classic" Coke is marketed as the

"Original Formula" for the drink defeats totally any inference that Coca-Cola's conduct in

marketing "Classic" Coke as Coke's "Original Formula" caused them to purchase Coca-Cola's

product. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 945 (7th Cir. 2005) (citing *Adler v.*

*William Blair & Co.*, 648 N.E.2d 226, 234 (Ill. App. Ct. 1995)) (to establish a claim for relief under

the ICFA a plaintiff must show that a "causal link" exists between a defendant's conduct and the plaintiff's damages); *Ryan v. Wersi Elec. GmbH & Co.*, 59 F.3d 52, 53 (7th Cir. 1995) (the ICFA requires a showing that deceptive or unfair trade practices proximately result in damages); *Martin v. Heinold Commodities, Inc.*, 643 N.E.2d 734, 746-47 (Ill. 1994) (ICFA plaintiffs must prove that allegedly deceptive or unfair trade practices proximately caused damages to them). As such, counsel for Kremers and McCann have failed to set forth sufficient evidence creating a genuine issue of material fact that "but for" Coca-Cola's unfair conduct, Kremers and McCann would not have purchased "Classic" Coke. *See Price*, 848 N.E.2d at 52 (citing *Evans v. Shannon*, 776 N.E.2d 1184, 1190 (Ill. 2002)) ("In the context of a[n] [ICFA] claim, . . . cause-in-fact is 'but for' cause. That is, the relevant inquiry is whether the harm would have occurred absent the defendant's conduct."); *Mulligan v. QVC, Inc.*, 888 N.E.2d 1190, 1199 (Ill. App. Ct. 2008) (to prevail on a claim under the ICFA a plaintiff must present "some evidence" that a defendant's allegedly unlawful conduct "was the 'but for' cause of [the plaintiff's] purchasing decisions"). As already has been discussed, lack of proximate cause may be determined by the Court as a matter of law where there is no genuine issue of material fact or only one conclusion is clearly evident from the record. Here the Court discerns no issue for a jury as to causation on the question of whether Coca-Cola has engaged in unfair trade practices within the meaning of the ICFA, and therefore summary judgment will be granted on McCann's claim for unfair trade practices in this case.

### 2. Unjust Enrichment

As a final matter, the Court addresses the matter of the propriety of summary judgment as to whether Coca-Cola has been unjustly enriched by the trade practices challenged in this case. Under Illinois law, to prevail on a claim of unjust enrichment "a plaintiff must present evidence that

the defendant unjustly retained a benefit to the plaintiff's detriment and that the defendant's retention of that benefit violated fundamental principles of justice, equity, and good conscience." *M & O Insulation Co. v. Harris Bank Naperville*, 783 N.E.2d 635, 639 (Ill. App. Ct. 2002) (citing *B & B Land Acquisition, Inc. v. Mandell*, 714 N.E.2d 58, 63 (Ill. App. Ct. 1999)). *See also BancInsure v. BMB Elec. Co.*, No. 03 C 2692, 2004 WL 765124, at *3 (N.D. Ill. Apr. 8, 2004) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989)) (to state a claim for unjust enrichment under Illinois law, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience.").  Illinois law does not require wrongful conduct as a necessary element of a claim for unjust enrichment. *See Midcoast Aviation, Inc. v. General Elec. Credit Corp.*, 907 F.2d 732, 738 n.3 (7th Cir. 1990) (quoting *Partipilo v. Hallman*, 510 N.E.2d 8, 11 (Ill. App. Ct. 1987)) ("[A] cause of action based on unjust enrichment . . . does not require fault on the part of the defendant."); *Board of Highway Comm'rs, Bloomington Twp. v. City of Bloomington*, 97 N.E. 280, 285 (Ill. 1911) (imposing quasi-contract liability despite an absence of "wrongful intention on the part of anyone in connection with this transaction"); *Eighteen Invs., Inc. v. NationsCredit Fin. Servs. Corp.*, 876 N.E.2d 1096, 1103 (Ill. App. Ct. 2007) (a "cause of action based upon unjust enrichment does not require fault or illegality on the part of" the defendant, because "the essence of the cause of action is that one party is enriched and it would be unjust for the party to retain the enrichment."); *Firemen's Annuity & Benefit Fund v. Municipal Employees', Officers' & Officials' Annuity & Benefit Fund of Chicago*, 579 N.E.2d 1003, 1007 (Ill. App. Ct. 1991) (same).

However, although fraud is not an element of a claim for unjust enrichment under Illinois law, the United States Court of Appeals for the Seventh Circuit nevertheless has made clear that "where the plaintiff's claim of unjust enrichment is predicated on the same allegations of fraudulent conduct that support an independent claim of fraud, resolution of the fraud claim against the plaintiff is dispositive of the unjust enrichment claim as well." *Association Benefit Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007) (citing *Athey Prods. Corp. v. Harris Bank Roselle*, 89 F.3d 430, 436 (7th Cir. 1996)) (holding that a pharmacy benefit manager ("PBM") did not act with fraudulent intent when it promised to pay commissions to a company that facilitated contracts between PBMs and organizations seeking administrators for prescription benefit plans in connection with a third-party contract being pursued by the PBM and the company, thus precluding the company's recovery under Illinois law on an unjust enrichment claim that was predicated on the allegedly fraudulent nature of the PBM's promise) (emphasis omitted).  *See also Sefton v. Toyota Motor Sales U.S.A.*, No. 09 C 3787, 2010 WL 1506709, at *6 (N.D. Ill. Apr. 14, 2010) (quoting *HPI Health Care*, 545 N.E.2d at 679) (dismissing a claim for unjust enrichment under Illinois law, and stating, "recovery on an unjust enrichment theory requires allegations 'that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience.'  The only allegations in Plaintiff's complaint that might satisfy that requirement are those in support of her consumer fraud claim, but the court has already dismissed that claim."); *DigaComm, LLC v. Vehicle Safety & Compliance, LLC*, No. 08 C 338, 2009 WL 509736, at *8 (N.D. Ill. Mar. 2, 2009) ("Where a plaintiff's theory of unjust enrichment is based on the same allegations of fraudulent dealings that support a fraud claim, resolution of the fraud claim against the plaintiff is also dispositive of the

unjust enrichment claim."); *Omnicare, Inc. v. UnitedHealth Group, Inc.*, 594 F. Supp. 2d 945, 981 (N.D. Ill. 2009) (quoting *Association Benefit*, 493 F.3d at 855) ("[W]hen the plaintiff's particular theory of unjust enrichment is based on alleged fraudulent dealings and we reject the plaintiff's claims that those dealings, indeed, were fraudulent, the theory of unjust enrichment that the plaintiff has pursued is  no longer viable.") (emphasis omitted).  Here the basis for the unjust enrichment claim in this case is also the basis of the claim for deceptive trade practices that counsel for Plaintiffs concede that they cannot maintain (as well as the basis for the claim of unfair trade practices that the Court concludes that Plaintiffs cannot maintain), and therefore summary judgment is due to be granted on the claim of unjust enrichment in this case.

### III. CONCLUSION

Coca-Cola's motion for summary judgment (Doc. 56) is **GRANTED**.  The claims of Kremers and McCann in this case are **DISMISSED with prejudice**.  Coca-Cola's motion for a stay of this case (Doc. 58) and Plaintiffs' motion for class certification (Doc. 64) are **DENIED as moot**.  The Clerk of Court is directed to enter judgment in this case in accordance with this Order.

**IT IS SO ORDERED.**

DATED:  April 27, 2010

/s/ G. Patrick Murphy
G. PATRICK MURPHY
United States District Judge